COMMONWEALTH of Pennsylvania, Appellee

v.

Daniel Patrick CAULEY, Appellant.

Superior Court of Pennsylvania.

Submitted July 19, 2010.

Filed Nov. 29, 2010.

36. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor in accordance with 42 Pa.C.S. § 9711(i).

Michael J. DeRiso, Pittsburgh, for appellant.

Kelly T. Hammers, Asst. Dist. Atty., for Com., appellee.

BEFORE: BOWES, ALLEN, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, Daniel Patrick Cauley, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his conviction

* Former Justice specially assigned to the Superior Court.

for driving under the influence, highest rate of alcohol.[1] Appellant contends on appeal that the police did not have reasonable suspicion to conduct field sobriety tests. We hold that police officers may conduct sobriety tests after a citizen effectuates an encounter when the officer observes evidence of alcohol intoxication as a result of the encounter, and the officer observed the citizen driving a vehicle immediately prior to the encounter. Accordingly, we affirm.

The trial court adequately stated the facts:

The charges in this case arose from an incident that occurred on January 11, 2009 in Trafford Borough, Westmoreland County. Officer William Bell of the Trafford police department was on the sidewalk in front of a residence on Eighth Street and [sic] when he observed [Appellant] drive up Eighth Street and park his 2005 GMC pickup truck some twenty to thirty feet away from Officer Bell. Officer Bell acknowledged that there was nothing remarkable or suspicious about the manner in which [Appellant] operated his vehicle. [Appellant] then immediately approached Officer Bell and began asking why police were at that location.[2] Officer Bell smelled a strong odor of an alcoholic beverage coming from [Appellant], and observed that his eyes were bloodshot. Believing [Appellant] to be intoxicated, Officer Bell asked him to perform several field sobriety tests. [Appellant] agreed to do so, and failed all tests that were administered by the police. [Appellant] admitted to drinking that evening. [Appellant] agreed to submit to a breathalyzer test, which yielded a blood alcohol reading of 0.199%.

[Appellant] was charged by criminal information filed on March 12, 2009 with Driving Under the Influence of Alcohol (75 Pa.C.S. § 3802(c)). [Appellant] filed a motion to suppress, alleging that Officer Bell had no reasonable suspicion to stop [Appellant] while he was on the street or sidewalk. Following a hearing held on July 13, 2009, [Appellant's] motion was denied. The case proceeded to a non-jury trial on October 20, 2009, where the Commonwealth and [Appellant] elected to present no evidence, but stipulated to the Preliminary Hearing transcript, the Suppression Hearing transcript, and the reading from the breathalyzer machine indicating a BAC of 0.199%. After careful consideration, the court found [Appellant] guilty of Driving Under the Influence (75 Pa.C.S. § 3802(c)). He was sentenced on January 26, 2010 to a period of five years['] intermediate punishment with six months to be served on home electronic monitoring and related terms and conditions, costs and fines. This appeal timely followed. The sole issue presented on appeal is whether the trial court erred in denying [Appellant's] pre-trial Motion to Suppress.

Trial Ct. Op. at 1–3.

On appeal, Appellant argues that Officer Bell did not have reasonable suspicion to believe Appellant had engaged or was engaging in criminal activity. Appellant asserts that Officer Bell did not witness any motor vehicle violations and that he observed nothing remarkable about the way Appellant operated his vehicle. Appellant contends that, in the absence of any discernible facts to support a suspicion

1. 75 Pa.C.S. § 3802(c).

2. Appellant's girlfriend lived in close proximity to where Appellant approached Officer Bell.

that he was driving under the influence, Officer Bell did not have the requisite reasonable suspicion to conduct the sobriety tests. We disagree.

■ Our standard of review for suppression rulings is well-established:

> [I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003).

■ The legal standard of proof required by a police officer when engaging or interacting with a citizen varies depending on whether the citizen has been detained, and if so, the degree of the detention and the circumstances surrounding the interaction. *See Commonwealth v. Sands*, 887 A.2d 261, 268–69 (Pa.Super.2005) (quoting *Commonwealth v. Hill*, 874 A.2d 1214, 1217 (Pa.Super.2005)). There are three basic levels of interaction between citizens and police officers, and the accompanying standard of proof needed for each level is firmly established:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry* and its progeny: such

a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Id.* (quoting *Hill*, 874 A.2d at 1217); *see also Terry v. Ohio*, 392 U.S. 1, 23–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). " 'No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them.' However, 'if the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure.' " *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa.Super.2000) (quoting *Commonwealth v. Boswell*, 554 Pa. 275, 283–84, 721 A.2d 336, 339–40 (1998) (plurality)). "The term 'mere encounter' refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the fourth amendment." *Commonwealth v. Peters*, 434 Pa.Super. 268, 642 A.2d 1126, 1129 (1994) (quoting *Commonwealth v. Bennett*, 412 Pa.Super. 603, 604 A.2d 276, 280 (1992)). For example, a mere encounter transpires when an officer approaches a citizen on a public street for the purpose of making inquiries. *Id.* (quoting *Bennett*, 604 A.2d at 280).

■ In contrast, "[a]n investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes." *Commonwealth v. Smith*, 904 A.2d 30, 35 (Pa.Super.2006) (quoting *Commonwealth v. Barber*, 889 A.2d 587, 592 (Pa.Super.2005)). In other words, in view of all the circumstances, if a reasonable person would have believed that he was not free to leave, then the interaction constitutes an investigatory de-

tention. *See Peters,* 642 A.2d at 1129 (quoting *Commonwealth v. Harper,* 416 Pa.Super. 608, 611 A.2d 1211, 1215 (1992)); *Hill,* 874 A.2d at 1218–19 (quoting *Commonwealth v. Johonoson,* 844 A.2d 556, 562 (Pa.Super.2004)). An investigatory detention triggers the constitutional protection of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, and the prerequisites for such a detention as set forth in *Terry, supra.*[3] *Smith,* 904 A.2d at 35 (quoting *Barber,* 889 A.2d. .at 592).

▇▇▇▇ An investigative detention is lawful if supported by reasonable suspicion. *Sands,* 887 A.2d at 269 (quoting *Hill,* 874 A.2d at 1217). "To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion." *Smith,* 904 A.2d at 35 (quotation omitted). In addition, "we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." *Id.* at 35–36 (quoting *Barber,* 889 A.2d at 593). An investigative detention may last "as is necessary to confirm or dispel such suspicion." *Commonwealth v. LaMonte,* 859 A.2d 495, 500 (Pa.Super.2004) (quoting *Commonwealth v. Strickler,* 563 Pa. 47, 58, 757 A.2d 884, 889 (2000)). Because the level of intrusion may change during the course of the encounter, the record must be carefully scrutinized for any evidence of such changes. *Commonwealth v. Blair,* 860 A.2d 567, 572 (Pa.Super.2004) (citing *Strickler,* 563 Pa. at 58–60, 72–73, 757 A.2d at 889–91, 897–98).

▇▇▇ Upon review and in consideration of the circumstances of this case, we find that the trial court did not err in concluding Officer Bell had reasonable suspicion to detain Appellant and submit him to field sobriety tests. The initial contact between Appellant and Officer Bell was not initiated by Officer Bell; rather, upon parking his vehicle, Appellant immediately approached the officer and began asking him why he was at that particular location. N.T. Suppression Hearing, 7/13/09, at 6, 9. A police officer need not possess reasonable suspicion in order to approach a citizen and ask him a question or request information from him. *See Beasley, supra; Sands, supra.* Certainly, an officer then does not require reasonable suspicion when a citizen voluntarily approaches the officer and speaks to the officer on his own accord. Officer Bell did not detain Appellant when he exited his vehicle nor did he initiate the conversation. N.T. Suppression Hearing, at 6, 9. There is also no reason to require Officer Bell, and other officers similarly situated, to take any special constitutional precautions with citizens who voluntarily approach them to make certain inquiries, as Appellant did in this case. Although it may not have been unreasonable for Appellant to inquire as to the purpose of Officer Bell's presence at his girlfriend's residence, neither was Appellant compelled to speak with Officer Bell, and he could have left the area or ignored him. *See Peters, supra; Hill, supra.* The initial interaction between Appellant and Officer Bell was therefore, at the most, a mere encounter, and the fact that Appellant initiated a conversation with him does not give rise to a constitutional requirement on behalf of Officer Bell to possess reasonable suspicion before speaking with Appellant. *See Sands, supra; Beasley, supra.*

**3.** Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution afford a person the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. art. I, § 8.

Prior to the sobriety tests, when Appellant approached Officer Bell and asked him why he was at the residence, Officer Bell noticed indicia of intoxication, as he smelled a strong odor of alcohol on Appellant's breath and observed that Appellant's eyes were bloodshot. N.T. Suppression Hearing, at 6, 9. Based on his observations, Officer Bell asked Appellant to perform field sobriety tests. *Id.* at 7. Officer Bell admitted that when he asked Appellant to submit to a field sobriety test, Appellant was not free to leave. *Id.* At this point, the interaction between Appellant and Officer Bell was no longer a mere encounter, but transformed into an investigative detention, upon which reasonable suspicion was required. *See Barber, supra; Sands, supra; Blair, supra.*

We have no hesitation in concluding Officer Bell possessed the requisite reasonable suspicion. Upon speaking with Appellant, Officer Bell observed a strong odor of alcohol emanating from Appellant and Appellant's bloodshot eyes, both classic signs of intoxication. N.T. Suppression Hearing at 6–7, 9; *see Commonwealth v. Angel,* 946 A.2d 115, 118 (Pa.Super.2008) (stating that classic signs of intoxication include odor of alcohol, slurred speech, and glassy eyes). Officer Bell not only had indicia of Appellant's intoxication, but he also observed Appellant operating a motor vehicle immediately prior to their interaction. Officer Bell pointed to articulable and specific facts that gave rise to the probability that Appellant was driving under the influence. To the extent Appellant argues Officer Bell did not see him commit a violation of the Motor Vehicle Code, such evidence is necessary to support a traffic stop, not mere encounters. *See* 75 Pa.C.S. § 6308(b); *Angel,* 946 A.2d at 117–18. Officer Bell was permitted to draw the inference that Appellant, having driven to the scene and immediately exhibited signs of intoxication, drove to the scene while in-toxicated. Accordingly, Officer Bell lawfully submitted Appellant to field sobriety tests to confirm or dispel his suspicions. *See Smith, supra; LaMonte, supra.*

Finally, as a result of the sobriety test, Officer Bell had probable cause to arrest Appellant. Appellant offers no substantial argument to the contrary. Accordingly, we hold that the trial court properly denied Appellant's motion to suppress after receiving evidence that Officer Bell saw Appellant drive a motor vehicle, immediately approach the officer, and immediately exhibit signs of intoxication.

Judgment of sentence affirmed.