J-S68033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CORY HOUGHTON, | : | |
| | : | |
| Appellant | : | No. 569 EDA 2014 |

Appeal from the Judgment of Sentence entered on February 11, 2014
in the Court of Common Pleas of Chester County,
Criminal Division, No. CP-15-CR-0003830-2012

BEFORE: ALLEN, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 09, 2014**

Cory Houghton ("Houghton") appeals from the judgment of sentence imposed after he was convicted of driving under the influence – general impairment (hereinafter "DUI"), as well as the summary offenses of careless driving, registration and certificate of title required, and use of multiple-beam road lighting equipment.[1]  We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> [O]n July 12, 2012, Officer McCarthy of the Schuylkill Township Police Department was on duty at approximately 2:09 a.m.[,] travelling west on Route 23 (Valley Forge Road).  When he was near the 1100 block of Valley Forge Road, he observed a green Chrysler 300 sedan travelling east on Route 23 with its high beams activated.  The high beams remained on as the vehicle passed Officer McCarthy's car.  Officer McCarthy saw the vehicle turn into the parking lot of Frank's Sports Bar.  [Officer McCarthy] turned around, activated his emergency lights and

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 3714(a), 1301(a), 4306(a).

turned into the parking lot. He told [Houghton], who was already getting out of his vehicle, to get back in the car. [Houghton] complied and Officer McCarthy approached. [Houghton's] speech was normal, but his eyes were bloodshot and glassy, and Officer McCarthy detected a strong odor of alcohol. He asked if [Houghton] had been drinking, which [Houghton] denied. [Houghton] was asked to exit his vehicle in order to perform field sobriety tests (hereinafter "FSTs"). He satisfactorily performed the walk and turn test, but he failed the one-leg stand test and the finger-to-nose test.

After the FSTs were completed, Officer McCarthy removed a portable breath test device (hereinafter "PBT") from his pocket. When [Houghton] saw it, he immediately blurted out, "Do I have to take that?," to which Officer McCarthy responded "no." [Houghton] then asked "What would happen if I don't take it?" Officer McCarthy answered, "I will transport you to the hospital for a blood test." After that, [Houghton] said "so then if I take this, I get to go home?" Officer McCarthy replied "no, you don't because you didn't do well on the other tests." [Officer] McCarthy also stated "if you're being honest with me about not having anything to drink, everything will go smoothly." [Houghton] then stated, "Look, I'm not drunk, okay? But I haven't eaten anything all day. I just chugged three beers before I left. If I take that thing[, *i.e.*, the PBT], I'm not going to pass it." Officer McCarthy told him to think about it. [Houghton] then agreed to take the PBT.[2] [Houghton] was subsequently taken into custody for DUI[, and placed in handcuffs,] and put in the rear of the police car. He was transported to Phoenixville Hospital[,] where he refused the blood test.

Trial Court Opinion, 6/18/14, at 2-3 (footnote added).

After taking Houghton into custody, Officer McCarthy charged him with the above-mentioned offenses. Prior to trial, Houghton filed a Motion to Suppress his inculpatory statements made to Officer McCarthy, asserting that they were made during a custodial interrogation, and because Officer

---

[2] The record does not disclose the exact result of the PBT. However, Officer McCarthy's Affidavit of Probable Cause states that the PBT gave a positive indication that Houghton had consumed alcohol.

McCarthy had not read Houghton his **Miranda**[3] rights prior to the statements, they were therefore inadmissible. The trial court denied the Motion to Suppress.

The matter proceeded to a bench trial, at the close of which the trial court convicted Houghton on all counts, and sentenced him to serve fifteen days in jail, followed by seventy-five days of electronic monitoring, and six months of probation.[4] In response, Houghton timely filed a Notice of Appeal.

Houghton presents the following issues for our review:

I. Whether the trial court erred in refusing to suppress [Houghton's] statements that he chugged three beers and knew he would fail a breath test where said statements were elicited after [] Officer [McCarthy] advised [Houghton] that he was not free to go home based upon [Houghton's] performance on [the FSTs] and that everything would go smoothly so long as [Houghton] had been honest about not having anything to drink?

II. Whether there is insufficient evidence against [Houghton] to support the finding of guilt on the charge[] of [DUI], specifically when the evidence was insufficient to show that [Houghton] was rendered incapable of safe driving as a result of drinking three beers?

Brief for Appellant at 5 (capitalization and footnote omitted).

Houghton first argues that the trial court erred in denying his Motion to Suppress his inculpatory statements made to Officer McCarthy because they

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] We observe that this was Houghton's second conviction for DUI.

occurred during a custodial interrogation, requiring **Miranda** warnings.[5]  **Id.** at 12-19.

> In reviewing the denial of a suppression motion,
>
> > our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings.  In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted.  When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.  As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

**Commonwealth v. Page**, 59 A.3d 1118, 1131 (Pa. Super. 2013) (brackets and citation omitted).

> This Court has explained that
>
> > [t]he legal standard of proof required by a police officer when engaging or interacting with a citizen varies depending on whether the citizen has been detained, and if so, the degree of the detention and the circumstances surrounding the interaction.  There are three basic levels of interaction between citizens and police officers, and the accompanying standard of proof needed for each level is firmly established:
> >
> > > The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond.  The second category, an investigative detention, derives from **Terry**[6] and its progeny: such a

---

[5] Houghton does not challenge the legality of Officer McCarthy's initial traffic stop for Houghton's failure to dim his high-beam headlights.  Additionally, Houghton's vehicle registration was expired.

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

> detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa. Super. 2010) (footnote added; citations omitted); *see also Commonwealth v. Korenkiewicz*, 743 A.2d 958, 963 (Pa. Super. 1999) (stating that "the classification of the interaction between police and citizen determines the scope of applicable constitutional protections.").

In the instant case, it is undisputed that the interaction between Houghton and Officer McCarthy was not a mere encounter. At issue is whether the interaction was an investigative detention, which does not require the provision of *Miranda* warnings, or a custodial detention, to which the dictates of *Miranda* attach. *See Commonwealth v. Murray*, 936 A.2d 76, 81 (Pa. Super. 2007) (stating that "[i]t is well-established that the dictates of *Miranda* do not attach during an investigatory detention." (citation and quotation marks omitted)); *see also Commonwealth v. Kunkle*, 79 A.3d 1173, 1179 (Pa. Super. 2013) (stating that "[t]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." (citation omitted)).

Regarding investigative detentions, this Court has explained that

> an investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. In other words, in view of all the circumstances, if a reasonable person would have

- 5 -

believed that he was not free to leave, then the interaction constitutes an investigatory detention. An investigatory detention triggers the constitutional protection of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, and the prerequisites for such a detention as set forth in **Terry, supra**.

**Cauley**, 10 A.3d at 325-26 (footnote, citations and quotation marks omitted).

Additionally, we have observed that

[a] law enforcement officer who lacks the precise level of information necessary for probable cause to arrest but possesses reasonable suspicion of criminal activity, is not required to simply shrug his shoulders and allow … a criminal to escape. Rather, the officer may conduct a brief, investigatory stop to maintain the status quo temporarily while obtaining more information. …

The factors considered to determine whether a detention is investigative or custodial include:

the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

**Commonwealth v. Pizarro**, 723 A.2d 675, 681 (Pa. Super. 1998) (citations and quotation marks omitted). Moreover, we have held that "[t]he mere fact that an individual is subjected to a stop and a period of detention during which the individual is subject to the control of the police and is not free to leave (a seizure) does not render such detention necessarily 'custodial' so as to require **Miranda** warnings." **Commonwealth v. Ellis**, 549 A.2d 1323, 1331-32 (Pa. Super. 1988) (citing **Michigan v. Long**, 463

- 6 -

U.S. 1032, 1051 (1984) (stating that "[d]uring any investigative detention, the suspect is "in the control" of the officers in the sense that he may be briefly detained against his will[.]")).

Houghton summarizes his argument in connection with this claim as follows:

> [Houghton's] statements to Officer McCarthy that he "just chugged three beers" and "knew he would fail that thing" were made during custodial interrogation without the provisions of the *Miranda* warnings and therefore improperly admitted at trial. By telling [Houghton] that he would not be free to go home at the conclusion of the roadside encounter due to [Houghton's] performance on [the FSTs] already conducted, [O]fficer [McCarthy] conveyed to [Houghton] his obvious intent to arrest [Houghton] for [DUI]. Therefore, [Houghton] was in custody for *Miranda* purposes when he subsequently made the statements at issue.
>
> [Houghton] was subject to interrogation at the time of his statements because [O]fficer [McCarthy] should have known that his conduct in presenting [Houghton] with the PBT, telling him that he would not be free to go home due to his performance on the [FSTs], and advising him that as long he had been honest about not having anything to drink, would have been likely to evoke an effort on the part of [Houghton] to defend himself. This is especially so since [O]fficer [McCarthy] did not believe [Houghton] was being honest about not having anything to drink, and made the decision to arrest before presenting [Houghton] with the PBT.

Brief for Appellant at 12.

It is undisputed that Officer McCarthy conducted a routine, legal traffic stop of Houghton's vehicle for a violation of the Motor Vehicle Code (hereinafter "the Code"). While speaking with Houghton, Officer McCarthy detected a strong odor of alcohol coming from Houghton's person, and observed that Houghton had glassy, bloodshot eyes. N.T., 4/17/13, at 18.

At that point, Officer McCarthy had reasonable suspicion that Houghton was driving under the influence of alcohol,[7] and began investigating whether Houghton was intoxicated to an extent above the legal limit, thus turning the interaction into an investigative detention. Officer McCarthy asked Houghton to perform three FSTs, two of which he failed. *Id.* at 20-24. Officer McCarthy then withdrew a PBT from his pocket, in response to which Houghton spontaneously stated, "Do I have to take that?" *Id.* at 24. Officer McCarthy responded in the negative, and informed Houghton that if he refused the PBT, he would be taken to the hospital for a test of his blood alcohol content ("BAC"). *Id.* Houghton then asked Officer McCarthy, "so then if I take [the PBT], I get to go home?[,]" to which Officer McCarthy replied "that was not the case due to the fact that [Houghton] had not performed well on … two of the [FSTs]." *Id.* at 26-27. According to Houghton, at this point, the interaction changed from an investigative detention into a custodial detention, requiring *Miranda* warnings, because "[O]fficer [McCarthy] conveyed to [Houghton] his obvious intent to arrest [Houghton] for [DUI,]" and, therefore, Houghton's subsequent statements that he had "chugged three beers" and "knew he would fail [the PBT]" should have been suppressed. Brief for Appellant at 12; *see also* N.T., 4/17/13, at 27. We disagree.

---

[7] Houghton does not contest that Officer McCarthy had reasonable suspicion to investigate whether he was intoxicated.

The record reveals that Officer McCarthy did not place Houghton under arrest and take him into custody until he failed the PBT. This was after Houghton had made his inculpatory statements. From the totality of the circumstances, we determine that the interaction that occurred before Officer McCarthy took Houghton into custody was not so coercive as to constitute the functional equivalent of an arrest. **See Cauley, supra**. Specifically, Officer McCarthy (1) detained Houghton for a brief period of time to investigate a potential DUI; (2) conducted the traffic stop and investigation in a public parking lot; (3) did not physically restrain Houghton in any way; (4) never threatened to or used any force during the interrogation; and (5) used routine FSTs commonly used in such situations to confirm or dispel his suspicions of DUI. **See Pizarro, supra** (setting forth the factors to consider when determining whether a detention is investigative or custodial). Accordingly, at the time of Houghton's inculpatory statements, the interaction was still an investigative detention, and Officer McCarthy was therefore not required to read Houghton his **Miranda** rights at that time.[8] **See Murray, supra**; **Ellis, supra**. Moreover, contrary to Houghton's argument, the fact that Officer McCarthy stated to Houghton that he would not be permitted to go home if he performed the

---

[8] Since we determine that Houghton was not in custody, it is not necessary to engage in a discussion of whether Officer McCarthy's questioning constituted interrogation.

PBT did not, in itself, convert the interaction into a custodial detention.[9] **See**

**Commonwealth v. Gommer**, 665 A.2d 1269, 1274 (Pa. Super. 1995) (holding that a police interaction with a motorist suspected of DUI constituted an investigative detention, even though the police officer had taken possession of the appellant's car keys following the traffic stop, where (a) the officer had observed the appellant driving erratically and had reasonable suspicion that the appellant was under the influence; (b) the subsequent investigative detention was brief; (c) the officer did not threaten or use force; and (d) the officer did not interrogate the appellant); **see also**

**Ellis**, 549 A.2d at 1331 (stating that "every traffic stop and every **Terry** stop involves a stop and a period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him."). Therefore, the trial court properly refused to suppress Houghton's inculpatory statements.

Next, Houghton argues that the evidence was insufficient to convict

---

[9] We observe that after Officer McCarthy made this statement, he also stated to Houghton, regarding taking the PBT, "if he [Houghton] had been being honest with me about not having anything to drink, then everything would go smoothly." N.T., 4/17/13, at 27.

- 10 -

him of DUI under section 3802(a)(1)[10] of the Code because the Commonwealth failed to prove that his alleged consumption of "three beers" rendered him incapable of safe driving. *See* Brief for Appellant at 18-19 (citing, *inter alia*, **Commonwealth v. Rosko**, 509 A.2d 1289, 1291 (stating that "[i]n order to convict [a]ppellant of a violation of [the predecessor statute to section 3802(a)(1)], the Commonwealth must prove not only that [a]ppellant had been driving but that he was 'under the influence of alcohol *to a degree which renders the person incapable of safe driving*.'" (emphasis in original))). According to Houghton, "there was no evidence presented to establish a nexus between [Houghton's] consumption of alcohol, and his ability to safely drive," in that (1) Officer McCarthy did not observe Houghton driving erratically; (2) Officer McCarthy testified that Houghton did not slur his speech or stumble when he got out of the car; (3) Houghton passed one of the three FSTs; and (4) "the Commonwealth [did not] present any evidence or testimony that [Houghton's] inability to perform [the remaining FSTs was] related to his inability to safely operate a vehicle." Brief for Appellant at 20-21.

---

[10] Section 3802(a)(1) provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1); **see also Commonwealth v. Kerry**, 906 A.2d 1237, 1241 (Pa. Super. 2006) (stating that "Section 3802(a)(1) … is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." (citation and quotation marks omitted)).

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 2014 PA Super 181, at *83 (Pa. Super. 2014) (citation omitted).

The Code provides, regarding a motorist's refusal to submit to a BAC test, as follows:

> In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 …, the fact that the defendant refused to submit to chemical testing … may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

Here, the evidence established that (a) Houghton violated the Code by having his high beams activated when passing Officer McCarthy; (b) Officer McCarthy detected a strong odor of alcohol emanating from Houghton's person, and noticed that he had bloodshot, glassy eyes; (c) Houghton failed two of the three FSTs; (d) Houghton admitted to having "chugged three beers" prior to driving; and (e) Houghton refused to submit to a test of his BAC at the hospital. We conclude that all of this evidence was amply sufficient to support Houghton's conviction of DUI, and the trial court therefore properly rejected Houghton's sufficiency challenge. ***See Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa. Super. 2011) (holding that the evidence was sufficient to sustain the appellant's conviction of DUI where the appellant (a) violated the Code by coasting through a stop sign; (b) smelled of alcohol; and (c) failed four separate FSTs). Moreover, to the extent that Houghton points to the lack of evidence of any erratic driving on his part, this Court has stated that "[e]vidence of erratic driving is not a necessary precursor to a finding of guilt under [section 3802(a)(1)]. The Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test." ***Id.***

Accordingly, because we conclude that the trial court properly denied Houghton's Motion to Suppress, and there was sufficient evidence to support his DUI conviction, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Allen, J., joins the memorandum.

- 13 -

Jenkins, J., files a concurring memorandum.
Judgment Entered.


_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/9/2014</u>