J-S06024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL CIVITELLA | |
| Appellant | No. 353 EDA 2014 |

Appeal from the Judgment of Sentence October 25, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007319-2011

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED MARCH 09, 2015**

Michael Civitella appeals from the judgment of sentence, imposed by the Court of Common Pleas of Delaware County, following his convictions for driving while operating privilege is suspended[1] and driving under the influence ("DUI").[2]

On May 29, 2011, shortly after 2:00 a.m., Officer Stephen Bannar of the Radnor Township Police Department received a dispatch call for an accident at Brookside Road and Conestoga Roads in Wayne, PA.  Officer Anthony Radico was the first to respond, followed by Officer Bannar.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 1543(b)(1).

[2] 75 Pa.C.S. § 3802(c).

When the officers arrived at the scene, the vehicle was no longer present. Officer Bannar saw that some of the shrubbery and rocks lining the perimeter of the park appeared out of place, and he observed tire marks in the mud in front of the rocks. Officer Bannar further observed reddish fluid leading from the accident location down Conestoga Road to Parkes Run. The two officers followed the trail of fluid down Parkes Run and onto Leslie Road.

The fluid trail ended about half a mile from the scene of the accident, at a private residence located at 860 Leslie Road. The officers shined their spotlights onto the fluid and followed it up the driveway of the residence. When the officers reached the top of the driveway, they observed a black Mercedes parked parallel across the driveway, with the nose of the vehicle facing the residence. There was white smoke coming from the vehicle.

Upon further inspection, the officers observed severe front-end damage to the Mercedes, and both the driver-side and passenger-side airbags had deployed. The officers found Civitella lying on the ground next to the vehicle on the passenger-side.

Officer Radico asked Civitella what happened and if he needed medical attention. Civitella responded that he had struck some rocks on the trail and that "it wasn't a big deal." Civitella had a strong odor of alcohol on his breath, his speech was impaired, his face was flushed, his eyes were red and glossy, and he was unsteady on his feet. Officers Bannar and Radico helped Civitella to his feet because he could not stand on his own. When asked for identification, insurance, and registration, Civitella handed the officers his

business card. Officer Radico also asked Civitella where he was coming from. Civitella told the officer that he had been at a bar in Conshohocken. Based upon his observations, Officer Bannar believed that Civitella was under the influence of alcohol. Officer Radico then placed Civitella under arrest and transported him to Bryn Mawr Hospital. The officers did not read Civitella his **Miranda**[3] warnings.

On August 24, 2012, Civitella filed a Motion to Suppress the statements he made to police, arguing that the police had failed to provide him **Miranda** warnings prior to questioning. Hearings on that motion occurred on April 25, 2013, and May 2, 2013. The lower court denied the motion on July 12, 2013, and a jury trial commenced on August 6, 2013.

Following trial, a jury found Civitella guilty of DUI and driving while operating privilege is suspended. On October 25, 2013, the court sentenced Civitella to a term of 12 to 24 months' imprisonment, plus 90 days, followed by three years of probation and $3,800 in fines and costs. The court found Civitella eligible for participation in the Recidivism Risk Reduction Incentive (RRRI) and awarded him credit for time served. Trial Court Opinion, 5/14/14, at 1. Civitella filed post-sentence motions, which the court denied on January 2, 2014. Thereafter, on January 31, 2014, Civitella filed the instant appeal.

---

[3] **Miranda v. Arizona**, 385 U.S. 436 (1966).

On appeal, Civitella presents the following issue for our review: whether the trial court erred when it denied Civitella's motion to suppress his statements because he was subjected to custodial questioning without the benefit of *Miranda* warnings, in violation of PA. Const. Art. 1, § 9, and U.S. Const. Amend. V, XIV. Appellant's Brief, at 5.

Our standard of review for suppression rulings is well established:

[I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa. Super. 2010).

Civitella maintains that his statements to the officers on the night of his arrest were not voluntary. Rather, he claims the statements were the product of a custodial interrogation without proper *Miranda* warnings. Therefore, Civitella argues, the statements should have been suppressed. As such, the key inquiry will be whether Civitella was in custody at the time he made the statements to the arresting officers.

"An encounter between police and a suspect may be described as a mere encounter, an investigative detention, a custodial detention, or a formal arrest." *Commonwealth v. Haupt*, 567 A.2d 1074, 1077-78 (Pa.

Super. 1989), quoting **Commonwealth v. Douglass**, 539 A.2d 412, 417 (Pa. Super. 1988). This Court, in **Douglass**, went on to explain:

> A "mere encounter" (or request for information) need not be supported by any level of suspicion, but it carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion; it subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. A "custodial detention" must be supported by probable cause; it is deemed to arise when the conditions and/or duration of an investigating detention become so coercive as to be the functional equivalent of arrest. Formal arrest requires probable cause, and needs no further definition. Among the factors the court utilizes in determining whether the detention is custodial or investigative are: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions.

**Id.** at 417-18, 421 (citations omitted).

When police interrogate an individual, they must administer proper warnings as to that individual's constitutional rights to counsel and to remain silent, as well as the significance of waiving those rights. **Miranda**, **supra**. "Interrogation" has been defined as, "questioning initiated by law enforcement officials." **Commonwealth v. DeJesus**, 787 A.2d 394, 401 (Pa. 2001), citing **Miranda**, 384 U.S. at 444.

Instantly, the interaction between Civitella and the officers began as a mere encounter, in which the officers were trying to determine if a motor vehicle accident had occurred and if there was a need for immediate medical assistance. At trial, Officer Radico testified to the following:

**Q** [District Attorney]: What's the first thing you do when you see this person [referring to Civitella]?

**A**: His eyes were shut so I start, you know, asking him if he's okay. And you know he opened his eyes. He said yeah. I said are you okay? He said yeah. I said what happened? He said I hit some rocks at the trail. He said no big deal. I said are you sure you're okay? Yeah, I'm okay. I said okay. Then I started my investigation just that he was the driver of the vehicle for the accident.

N.T. Trial, 8/7/13, at 21-22.

We read Officer Radico's testimony in conjunction with the following testimony presented by Officer Bannar at the suppression hearing:

**Q**: And at this point [after the initial questions] in time was Mr. Civitella under arrest?

**A**: No.

**Q**: Would he have been free to go?

**A**: At that point in time no, because he has a strong odor of alcohol on his breath, and on his person so at that point in time he presented enough evidence that he was actually intoxicated and that he actually was driving this vehicle when he said he struck these rocks. No.

N.T. Suppression Hearing, 4/25/13, at 26.

Based upon our review of the certified record, we agree with the trial court's conclusion that the interaction between Civitella and the officers began as a mere encounter. *See Commonwealth v. Kendall*, 976 A.2d 503 (Pa. Super 2009) (officer's initial contact constituted a mere encounter where driver pulled over for an unknown reason). Accordingly, there was no need to provide *Miranda* warnings at that time.

At trial, Officer Radico testified that during their encounter, Civitella had trouble standing up, was unsteady on his feet, smelled of alcohol, mentioned that he had hit some rocks, and was unable to produce his identification from his wallet. N.T. Preliminary Hearing, 12/20/11, at 23. Based on these observations, the officers developed a reasonable suspicion that Civitella had been driving under the influence, raising the level of the interaction to an investigative detention. *See Commonwealth v. DeLeon*, 419 A.2d 82 (Pa. Super. 1980) (damage to accident site and vehicle, coupled with odor of alcohol on appellant, who was found lying near car, sufficient to reasonably suspect DUI occurred); *see also Commonwealth v. Kasunic*, 620 A.2d 525 (Pa. Super 1993) (defendant found next to vehicle, smelling of alcohol and exhibiting signs of intoxication, consistent with suspicion that he operated vehicle while intoxicated).

As discussed above, an investigative detention must be supported by reasonable suspicion and "it subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest." *Douglass*, 359 A.2d at 417-18. Here, the officers had reasonable suspicion to believe Civitella had operated a vehicle under the influence when they observed a trail of fluid from the site of an accident directly to his home, found his car severely damaged with deployed airbags, and saw Civitella lying on the ground exhibiting signs of intoxication. At the onset of that suspicion, the encounter elevated to an investigative detention, whereby the police asked questions in an

investigatory manner. The whole interaction between Civitella and the officers lasted less than one half hour. N.T. Suppression Hearing, 4/25/13, at 30. Furthermore, there is no evidence in the record to suggest that police used, or threatened the use of, any force beyond, as Civitella suggests, the potential use of overhead squad lights to illuminate a dark and secluded area. Appellant's Brief, at 10. While the officers did admit to touching Civitella, this was only to help him to his feet and to prevent him from falling. N.T. Suppression Hearing, 4/25/13, at 25. There is no evidence to suggest that police in anyway moved Civitella, or restricted his freedom of movement.

Although the officers testified that Civitella would not have been free to leave, we note that, "the test for custodial interrogation does not depend on the subjective intent of the law enforcement interrogator. Rather, the test focuses on whether in the individual being interrogated reasonably believes his freedom of action is being restricted." ***Commonwealth v. Williams***, 650 A.2d 420, 427 (1994). Civitella fails to present any evidence to support his assertion that he reasonably believed his freedom was being restricted prior to his arrest.

Based on the foregoing, we agree with the trial court's conclusion that Civitella was not in custody at the time he made the statements in question. Trial Court Opinion, 5/14/14, at 5. Civitella was not physically deprived of his freedom in any way or placed in a situation where he would reasonably believe that his movement was restricted. Because he was not in custody,

J-S06024-15

Civitella was not entitled to **Miranda** warnings.  Accordingly, we conclude that the record supports the suppression court's findings, and that the legal conclusions drawn therefrom were not made in error.  **Cauley, supra.**

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015

- 9 -