J-S10012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RASHEED YUSEF HOWARD | : | |
| Appellant | : | No. 583 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 31, 2025
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0001360-2021

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED: MARCH 30, 2026**

Appellant Rasheed Yusef Howard appeals from the judgment of sentence entered after the Northumberland County Court of Common Pleas convicted him of two counts of Driving Under the Influence ("DUI") and one count each of Possession of Drug Paraphernalia, Driving Without a License, Driving While Operating Privileges are Suspended or Revoked, and Operation a Vehicle with Improper Sun Screening.[1] He challenges the denial of his suppression motion, asserting that neither the traffic stop nor his arrest were supported by probable cause. After careful review, we affirm.[2]

---

[1] 75 Pa.C.S. § 3802(d)(1)(ii) and (d)(2); 35 P.S. § 780-113(a)(32); 75 Pa.C.S. §§ 1501, 1543, and 4524(e)(1).

[2] The Commonwealth did not file an appellee's brief.

We glean the relevant facts from the suppression hearing record.[3]  On May 7, 2021, at approximately 10:00 A.M., while on stationary patrol in a middle berm on Route 80, Pennsylvania State Trooper Tyler Arbogast observed a vehicle drive past him with window tinting that was so dark he could not see into the vehicle.  Trooper Arbogast followed the vehicle for a mile and, after confirming that he was unable to see into the vehicle through its rear windshield, he effectuated a traffic stop for illegal sunscreening.  He approached the vehicle from the passenger side and when Appellant, the sole occupant of the vehicle, rolled down the window, Trooper Arbogast immediately smelled burnt marijuana and noticed Appellant had glassy and bloodshot eyes.

Appellant said that he did not have a valid driver's license as it had been suspended and instead provided Trooper Arbogast with a Pennsylvania State ID card.  Appellant admitted that he had a small amount of marijuana inside the vehicle.  Trooper Arbogast asked Appellant to step out of the car and he continued questioning him on the side of the highway.  Appellant then told the trooper that he had a medical marijuana card and that he last smoked marijuana the previous night.  He admitted that he had a rolled marijuana cigarette in the vehicle's visor and a small amount of marijuana in a medical

---

[3] Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.  **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017) (citation omitted).

- 2 -

marijuana container in the center console. Appellant further admitted that the window tinting on his vehicle was too dark. He voluntarily consented to Trooper Arbogast's search of his vehicle. Troop Arbogast seized the marijuana cigarette found in the visor.[4]

Based on his observations of the smell of burnt marijuana both in the car and on Appellant's clothing, Appellant's glassy, blood shot eyes, and the marijuana cigarette found in the vehicle, Trooper Arbogast administered Standardized Field Sobriety Tests to Appellant. Based on Appellant's poor performance on four out of five tests, Trooper Arbogast concluded Appellant was unable to drive safely and arrested him. Trooper Arbogast drove him to a hospital where Appellant consented to a blood draw.

The Commonwealth charged Appellant with the above offenses. On March 16, 2023, Appellant filed a motion to suppress challenging the legality of the traffic stop and the ensuing investigation.

On September 18, 2023, the court held a hearing on the motion at which Trooper Arbogast testified that, while on patrol, he could not see inside Appellant's vehicle so he could not determine the occupants' genders or how many people were in the car until he made contact with Appellant. He also testified that he smelled burnt marijuana in the car and observed Appellant's

---

[4] Trooper Arbogast did not seize the medical marijuana from the center console as it was in a proper medical container with a prescription label with Appellant's name on it.

glassy, red eyes which provided him with reasonable suspicion to continue his investigation and conduct the field sobriety tests. The Commonwealth then played the video recording captured by the trooper's vehicle camera ("MVR").

During Trooper Arbogast's cross-examination, Appellant's counsel proffered two close-up photographs of Appellant's vehicle that were not taken at the time of the incident. Trooper Arbogast acknowledged that he could see inside the vehicle in the photographs but stated he could not see inside at the time of the stop. He also acknowledged that he did not test the depth of the tinting at the time of the stop because he did not have a working testing device on hand.

Appellant testified regarding the photographs his counsel submitted, stating that he could not remember the date the photographs were taken but acknowledged they were not taken at the time of the incident. Appellant also testified that the vehicle's windows had the same tint at the time of the traffic stop as they did in the photographs and stated that when he "sold the vehicle it was still in the same tint – the same tint is on the vehicle." N.T. Supp. Hr'g, 9/18/23, at 25. During the Commonwealth's re-cross examination, Appellant agreed that in speaking with Trooper Arbogast, he had "said something to the [e]ffect" of "the window tinting was too dark." *Id.* at 30.

Following argument, the suppression court took the matter under advisement. That same day, the court issued an order summarily denying the motion to suppress.

On January 16, 2024, the court held a bench trial, after which it found Appellant guilty of each charged offense. On March 31, 2025, the court imposed a sentence of incarceration of 72 hours to 6 months, plus fines.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed an "order as statement in lieu of [a Rule 1925(a)] opinion" addressing the issues raised by Appellant. Tr. Ct. Order filed 10/15/25 ("Rule 1925(a) Statement").

In his brief to this Court, Appellant raises the following issue for our review:

> Whether the suppression court erred in denying Appellant's suppression motion because police lacked the requisite reasonable suspicion and probable cause for the traffic stop, investigation, and arrest in violation of Appellant's rights under the Fourth Amendment to the United States Constitution and Article I Section 8 of the Pennsylvania Constitution.

Appellant's Br. at 4.

Appellant first argues that the court erred in denying his suppression motion because his photos and the MVR shows that "the window screening, being the sole purpose for the traffic stop as testified to by the trooper, did not rise to a level violative of the motion vehicle code and [t]his Court should find that the trooper therefore lacked probable cause for the traffic stop." *Id.* at 17-18.

We review the suppression court's denial of a motion to suppress to determine whether the record supports the court's factual findings and whether the legal conclusions drawn from those facts are correct.

- 5 -

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007). In conducting this review, we consider "only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* We are bound by the facts as found by the suppression court, so long as they are supported by the record. *Id.* We "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

As Appellant notes, the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right to be free of unreasonable searches and seizures. U.S. CONST. AMEND. IV; PA. CONST. ART. I SEC. 8. "Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police" that do not violate this constitutional right. *Commonwealth v. Raglin*, 178 A.3d 868, 871 (Pa. Super. 2018) (quoting *Commonwealth v. Ellis*, 662 A.2d 1043, 1047–48 (Pa. 1995)).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.

> *See Florida v. Royer*, 460 U.S. 491 [] (1983); *Florida v. Bostick*, 501 U.S. 429 [] (1991).
>
> The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty*, 468 U.S. 420 [] (1984); *Terry v. Ohio*, 392 U.S. 1 [] (1968).
>
> Finally, an arrest or "custodial detention" must be supported by probable cause. *See Dunaway v. New York*, 442 U.S. 200 [] (1979); *Commonwealth v. Rodriquez*, [] 614 A.2d 1378 ([Pa.] 1992).

*Raglin*, 178 A.3d at 871–72 (paragraph breaks added; citation omitted).

Where a traffic stop is based on an offense that does not require further investigation, our Supreme Court has held that an "officer must have probable cause to make a constitutional vehicle stop for such offenses." *Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008); *see also Commonwealth v. Feczko*, 10 A.3d 1285, 1290-91 (Pa. Super. 2010) (*en banc*) (applying *Chase* while discussing Section 6308(b)).

75 Pa.C.S. § 4524 provides the following pertaining to window tinting on motor vehicles:

> **(e) Sun screening and other materials prohibited.--**
>
> (1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

75 Pa.C.S. § 4524(e)(1).

An officer has probable cause to believe that a driver is in violation of the Vehicle Code's prohibition on window tint, 75 Pa.C.S. §§ 4524(e)(1) and

4107(b)(2), and a traffic stop for that violation is constitutionally permissible where the officer observes that the vehicle's windows are so darkly tinted that he cannot see inside it. *Commonwealth v. Prizzia*, 260 A.3d 263, 268-70 (Pa. Super. 2021).

In its Rule 1925(a) Statement, the court found that based on Trooper Arbogast's testimony that he could not see inside the vehicle, the traffic stop was supported by probable cause. Rule 1925 Statement at ¶1(A).

In his argument to this Court, Appellant asks us to conclude that the suppression court improperly weighed the evidence by not considering his photos and the recording from the MVR which, he contends, contradict the trooper's testimony that he could not see into the car.[5] Because it is within the suppression court's "sole province" to render credibility determinations and weigh the evidence, we reject Appellant's argument. *Elmobdy*, 823 A.2d at 183.

Moreover, the statute at issue provides that window tinting that does not allow someone to see into the vehicle violates the motor vehicle code. *See* 75 Pa.C.S. § 4524(e)(1). Trooper Arbogast testified that he could not see into the vehicle, and the court found his testimony credible. Since our standard of review requires us to consider "only the evidence of the

_____

[5] The record does not contain the MVR or any indication that it was admitted into evidence at the suppression hearing.

prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole," and Section 4525(e)(1) explicitly provides the statute is violated if a person cannot see inside the vehicle due to the window tinting, we reject Appellant's argument that the traffic stop was not supported by probable cause. *See, e.g., Prizzia*, 260 A.3d at 268-70.

•

Appellant next challenges Trooper Arbogast's investigation that followed the traffic stop. He argues that the smell of burnt marijuana alone was not sufficient to establish reasonable suspicion of criminal activity. *See* Appellant's Br. at 19, 21-22. He emphasizes that Trooper Arbogast "did not witness any erratic driving or any other alleged violation of the motor vehicle code beyond the window tint" and, thus, the administration of field sobriety tests was not supported by reasonable suspicion that Appellant was driving under the influence. *Id*. at 20, 22. He further contends that "having glassy and/or bloodshot eyes does not rise to a level of probable cause for driving under the influence" and "the evidence of record does not support that any reasonably prudent person would conclude that there was probable cause that Appellant was driving under the influence." *Id.* at 22. Distilling Appellant's argument to its essence, he contends Trooper Arbogast did not have reasonable suspicion to support his investigative detention, which included the administration of field sobriety tests, and his arrest following the

administration of those tests was not supported by probable cause. This argument warrants no relief.

The following legal precepts inform our review. "The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to related safety concerns." *Commonwealth v. Sloan*, 303 A.3d 155, 163 (Pa. Super. 2023) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015)). However, "a police officer may use information gathered during an initial traffic stop to justify a second investigatory detention[.]" *Sloan*, 303 A.3d at 164 (citation omitted); *see also* 75 Pa.C.S. § 6308(b) (allowing police officers to gather information from drivers stopped for traffic violations). An investigative detention must be supported by reasonable suspicion. *Raglin*, 178 A.3d at 871.

> To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In addition, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot. An investigative detention may last as long as is necessary to confirm or dispel such suspicion. Because the level of intrusion may change during the course of the encounter, the record must be carefully scrutinized for any evidence of such changes.

*Commonwealth v. Cauley*, 10 A.3d 321, 326 (Pa. Super. 2010) (citations and internal quotation marks omitted); *see also id.*, at 327 (concluding the smell of alcohol and the appellant's bloodshot and glassy eyes provided the

police officer with reasonable suspicion to support an investigative detention, which included the administration of field sobriety tests).

Pennsylvania allows possession of marijuana for medical purposes. Medical Marijuana Act ("MMA"), 35 P.S. § 10231.303(a). The MMA does not allow medical marijuana to be smoked. *See id.* at (b)(2)(iv). Although the smell of fresh marijuana "cannot objectively suggest anything more than possession of a substance that many Pennsylvanians can legally possess," the smell of burnt marijuana is one fact that may be considered when analyzing the existence of reasonable suspicion. *Sloan*, 303 A.3d at 165 (citing *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), and discussing its progeny holding that the smell of burnt marijuana provided reasonable suspicion that marijuana was being illegally smoked).

Here, following the traffic stop, Appellant indicated he was driving with a suspended license, that he had marijuana in the vehicle, and that he had a prescription for medical marijuana. Although Appellant denied having smoked marijuana that morning, Trooper Arbogast smelled burnt marijuana emanating from the vehicle and observed Appellant's glassy and bloodshot eyes. He also recovered a marijuana cigarette from the visor of Appellant's car. Under the totality of the circumstances, these facts—combined with the trooper's extensive training and experience in DUI enforcement regarding alcohol and controlled substances—provided the trooper with reasonable suspicion supporting his investigative detention, including the administration

of field sobriety tests to ascertain whether Appellant was capable of driving safely.

Finally, to the extent Appellant avers his arrest was not supported by probable cause, we disagree.

Probable cause is established when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citation omitted). "The question we ask is not whether the officer's belief was 'correct or more likely true than false.'" *Id.* (citation omitted). "Rather, we require **only a "probability**, and not a prima facie showing, of criminal activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)) (emphasis in original). "In determining whether probable cause exists, we apply a totality of the circumstances test." *Thompson*, 985 A.2d at 931 (citation omitted).

Because of his performance on the field sobriety tests, Trooper Arbogast had probable cause to arrest Appellant for, *inter alia*, driving under the influence of a controlled substance. At the suppression hearing, Trooper Arbogast testified as to each of the five field sobriety tests he administered and the results of each test which led him to conclude Appellant was impaired to the extent that he was not capable of driving safely. N.T. Supp. Hr'g at 10-15. In addition, during the hearing, the suppression court reviewed the

portion of the MVR relevant to Appellant's performance of those tests.[6] *Id.* at 14-15. To the extent Appellant implies his arrest was not supported by probable cause, he relies on Trooper Arbogast's testimony regarding the two of the five administered field sobriety tests that did not reveal indications of impairment and minimizes the significance of the evidence indicating impairment that supported to his arrest. Appellant's Br. at 22. Appellant is again asking this Court to reweigh the evidence, which we decline to do.

Accordingly, having concluded that the traffic stop was supported by probable cause and the ensuing investigation was supported by reasonable suspicion, we find the court properly denied Appellant's motion to suppress. We, thus, affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/30/2026

---

[6] The record contains no indication that the portion of the video viewed by the court was admitted into evidence.