J-A34029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ARTHUR KENT HAMRICK, :
:
Appellant : No. 2087 MDA 2013

Appeal from the Judgment of Sentence Entered November 14, 2013,
In the Court of Common Pleas of Adams County,
Criminal Division, at No. CP-01-CR-0000949-2012.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                      **FILED APRIL 17, 2015**

Appellant, Arthur Kent Hamrick, appeals from the judgment of sentence entered November 14, 2013, following his conviction at a bench trial of driving under the influence of alcohol ("DUI"), general impairment and DUI, highest rate of alcohol.  We affirm.

The trial court summarized the facts of the case as follows:

Appellant's August 19, 2013 non-jury trial, which incorporated testimony from his March 25, 2013 suppression hearing, revealed the following facts.  On May 31, 2012 at approximately 9:20 p.m., Officer Juanita Larmer of the Hamiltonban Township Police Department received a telephone call from Jesse Sanders on her work cell phone.  Officer Larmer's shift had ended at 9:00 p.m., but she remained in her patrol car and in full uniform.  Mr. Sanders, a friend of Officer Larmer and a firefighter and EMS technician with the Fairfield Fire Company, had been picking up pizza at Ventura's, a restaurant and bar in Fairfield, Adams County, Pennsylvania, with his friend Bradley Hartdagen.  Mr. Sanders called Officer Larmer after Mr.

Hartdagen saw a gentleman leave Ventura's looking confused and observed him attempting to enter a couple of different cars before he was able to locate his green Ford station wagon and drive away.

Mr. Sanders and Mr. Hartdagen began following the gentleman and observed his vehicle weaving and crossing the center line on several occasions. Mr. Sanders notified Officer Larmer of the gentleman's behavior and provided her with a description of the vehicle and its license plate number. After receiving this information, Officer Larmer placed a phone call to Adams County Control, alerting them to the presence of a potentially intoxicated driver in Fairfield Borough and providing the identifying information she had received. County Control then notified Officer Dustin Miller of the Carroll Valley Borough Police that there was a possible intoxicated driver and gave him the license plate number of the vehicle and the address where it was registered.

Soon after getting off the phone with County Control, Officer Larmer made a phone call to Officer Miller, further describing the situation as related to her by Mr. Sanders. Officer Larmer and Officer Miller, in separate cars, proceeded to Appellant's residence at 351 Fairfield Station Road and located the green Ford station wagon with the license plate number which Mr. Sanders had described to Officer Larmer. Once they arrived at the residence, Officer Miller knocked on Appellant's back door. Appellant answered the door after a minute or two and remained "half in and half out of the threshold." Upon the officers' encouragement, Appellant stepped onto his porch to speak with Officer Miller. The officers noted that Appellant's breath smelled strongly of alcohol and he exhibited signs of intoxication in that he was "not steady on his feet," his speech was slurred, his eyes were bloodshot, his face was flushed red, and his movements were slow and lethargic.

During their conversation outside of Appellant's house, Appellant admitted that he had been driving approximately 10-15 minutes before the officers arrived and that he was returning home from Ventura's Restaurant. Appellant stated that he drank one beer there. Officer Miller then asked Appellant whether he would be willing to come to Officer Miller's car to speak further

with him. At that point, Appellant became irate and attempted to go back into his house—Officer Miller prevented Appellant from retreating by grabbing his wrists. The officers then walked Appellant to Officer Miller's car, performed a pat down search of Appellant for weapons, and removed a knife from Appellant's pocket. Eventually, the officers were able to have Appellant perform field sobriety tests. The tests revealed indications that Appellant was intoxicated. Appellant then stated that he had consumed two beers at Ventura's. Officer Miller placed Appellant under arrest for DUI and transported him to Gettysburg Hospital for a blood test. Appellant's blood sample was sent to NMS labs where Appellant's blood alcohol content was determined to be .184 percent.

Trial Court Opinion, 1/6/14, at 1–3.

Appellant filed a suppression motion on December 17, 2012. The trial court held a hearing on March 25, 2013, and denied the motion on April 17, 2013. Following a bench trial on June 3, 2013, the trial court found Appellant guilty of DUI, general impairment and DUI, highest rate of alcohol. The trial court determined that Appellant's convictions merged for purposes of sentencing and held that his convictions were second offenses for sentencing purposes. The trial court sentenced Appellant on November 14, 2013, commensurate with the "Commonwealth's recommendation and the defense's agreement with that recommendation," Trial Court Opinion, 1/6/14, at 3, to thirty-six months in the County Intermediate Punishment Program ("IPP") with forty-five days in Phase I (re-entry), forty-five days in Phase II (house arrest), and the remainder in Phases III through V (restorative sanctions). *Id*.

Appellant filed a notice of appeal on November 21, 2013. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

A. Whether the Commonwealth presented sufficient evidence to substantiate a finding of guilt beyond a reasonable doubt on the charges, Did the police have sufficient justification to order the defendant out of his house, and forcibly escort him to their patrol cars, Did the police subject the defendant to custodial interrogations without the benefit of Miranda warnings.

Appellant's Brief at 6 (*verbatim*) (full capitalization omitted).

While Appellant presents this claim as a single issue in his Statement of Questions Involved, he breaks it down in the argument section of his brief into headings labeled A, B, and C. Appellant's Brief at 8. Heading "A" purports to assail the sufficiency of the evidence; however, Appellant fails to assert any argument in his brief, thus, this issue has been abandoned. Therefore, any claim regarding the sufficiency of the evidence is waived. **Bolick v. Commonwealth**, 69 A.3d 1267, 1269 (Pa. Super. 2013) (holding that failure to present an argument in support of issue results in waiver) (citing Pa.R.A.P. 2119(a) and **Commonwealth v. Spotz**, 18 A.3d 244, 282 (Pa. 2011)). **See also Commonwealth v. Samuel**, 102 A.3d 1001, 1003–1004 (Pa. Super. 2014) ("In order to develop a claim challenging the sufficiency of the evidence properly, an appellant must specifically discuss the elements of the crime and identify those which he alleges the Commonwealth failed to prove" and failure to do so results in waiver.).

Heading "C" purports to raise an issue regarding **Miranda**[1] warnings. Appellant fails to include a section identified as heading "C" in his brief. In his argument under heading "B," Appellant includes three conclusory sentences referencing **Miranda**, one of which is repeated twice. Appellant's Brief at 9 and 12. In **Commonwealth v. Harris**, 979 A.2d 387 (Pa. Super. 2009), we stated as follows:

> When an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. . . . **Commonwealth v. Einhorn**, 911 A.2d 960, 970 (Pa. Super. 2006) ("An appellate brief must provide citations to the record and to any relevant supporting authority. This Court will not become the counsel for an appellant, 'and will not, therefore, consider issues ... which are not fully developed in the brief.'"). **See also Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007); **Commonwealth v. Judd**, 897 A.2d 1224, 1233 (Pa. Super. 2006).

**Id**. at 393 (some internal citations omitted). Thus, this issue is also waived. The only issue preserved for review is the claim identified in Appellant's brief as issue "B."[2]

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] It is important to keep in mind that we are not now evaluating the sufficiency of the evidence, as we have held that issue waived. Thus, we are not evaluating whether the Commonwealth had to prove that Appellant was in actual physical control of his vehicle during the time when he was rendered incapable of safely doing so due to the consumption of alcohol. **Accord Commonwealth v. Segida**, 985 A.2d 871, 879 n.6 (Pa. 2009) (Commonwealth need not prove accused did not drink alcohol after accident because DUI statute does not contain this element).

Appellant's three-page argument under heading "B" consists of two pages of references to case law setting forth standards regarding probable cause and the existence of exigent circumstances under which police may arrest without a warrant when a defendant is in his home. The extent of Appellant's **argument** is as follows:

> In the present case, Officer Miller received a dispatch of a possible intoxicated driver and a registration plate number. There was no information as to the source of the information or the alleged observations that were made.

> When reviewing the audio/video recording from the patrol unit, and the audio recording of the County Dispatch Center, it was clear that no other information was conveyed to Officer Miller at the time of the arrest. It should be noted that [O]fficer Lamer [sic] testified that she made a cellphone call to Officer Miller informing him of a possible DUI and where it was heading, but that phone call is not on the audio/visual recording of Miller's car which occurs the time of the initial call to Officer Miller until the time of arrest. Also, there is no mention of the alleged phone call in any police report or prior testimony.

> Therefore, when Officer Miller ordered [Appellant] to come out of the house he simply had the equivalent of an anonymous uncooberated [sic] tip. He then removed [Appellant] from his house and conducted a pat-down search. During the incident, [Appellant] started bleeding. He was clearly under arrest (i.e. "if you don't take the tests we're going to the hospital").

> Once he was removed from the house, and subjected to physical restraint by two uniformed officers, [Appellant] was clearly in custody.

Appellant's Brief at 10–11. Appellant does not cite case law supporting his position, other than heretofore described references to standards, and he

fails to include any citations to the record in this case. He baldly asserts that all evidence "must be suppressed."

We consider this argument mindful of the following standard of review:

In addressing a challenge to a trial court's denial of a suppression motion we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Brown***, 64 A.3d 1101, 1104–1105 (Pa. Super. 2013)

(quoting ***Commonwealth v. Cauley***, 10 A.3d 321, 325 (Pa. Super. 2010)).

This Court recently explained the three types of interactions between citizens and police, as follows:

Interactions with police are classified as mere encounters, investigative detentions, or formal arrests. ***Commonwealth v. Ellis***, 379 Pa.Super. 337, 549 A.2d 1323, 1331 (1988).

Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. Probable cause must support a custodial interrogation or an arrest.

-7-

> ***Commonwealth v. Boswell***, 554 Pa. 275, 721 A.2d 336, 341 (1998) (citations omitted).

***Commonwealth v. Thompson***, 93 A.3d 478, 485 (Pa. Super. 2014).

Whether the instant matter began as a mere encounter or an investigative detention, the record is clear that police had reasonable suspicion throughout the encounter. While it is true that Appellant was in his home when the police officer came to his **back** door, the United States Supreme Court has stated, when discussing police approach to a **front** door, that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' ***Kentucky v. King***, 563 U.S. ___, ___, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)." ***Florida v. Jardines***, ___ U.S. ___, 133 S. Ct. 1409, 1416 (2013). Herein, when police prevented Appellant from retreating into his own house, the encounter clearly must be characterized as an investigative detention. N.T. (Suppression), 3/25/13, at 25; ***Commonwealth v. Smith***, 904 A.2d 30, 35 (Pa. Super. 2006) ("An investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes.").

"An investigatory detention triggers the constitutional protection of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, and the prerequisites for such a detention as set forth in ***Terry*** [***v. Ohio***, 392 U.S. 1, 23–26 (1968)]." ***Cauley***, 10 A.3d

at 325–326 (footnote and citations omitted). The **Cauley** Court further

stated:

> An investigative detention is lawful if supported by reasonable suspicion. [**Commonwealth v.**] **Sands**, 887 A.2d [261] at 269 [(Pa. Super. 2005)] (quoting [**Commonwealth v.**] **Hill**, 874 A.2d [1214,] 1217 [(Pa. Super. 2005]). "To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion." **Smith**, 904 A.2d at 35 (quotation omitted). In addition, "we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." **Id**. at 35–36 (quoting **Barber**, 889 A.2d at 593). An investigative detention may last "as is necessary to confirm or dispel such suspicion." **Commonwealth v. LaMonte**, 859 A.2d 495, 500 (Pa. Super. 2004) (quoting **Commonwealth v. Strickler**, 563 Pa. 47, 58, 757 A.2d 884, 889 (2000)). Because the level of intrusion may change during the course of the encounter, the record must be carefully scrutinized for any evidence of such changes. **Commonwealth v. Blair**, 860 A.2d 567, 572 (Pa. Super. 2004) (citing **Strickler**, 563 Pa. at 58–60, 72–73, 757 A.2d at 889–91, 897–98).

**Cauley**, 10 A.3d at 326.

The trial court, in its April 17, 2013 opinion denying Appellant's motion

to suppress, concluded that all three types of interactions were present in

this case. The court opined that Officer Miller's act of knocking on

Appellant's door was "nothing more than a mere encounter." Trial Court

Opinion (Suppression), 4/17/13, at 5 (citing **Commonwealth v. Gonzalez**,

979 A.2d 879, 884–885 (Pa. Super. 2009)). Alternatively, the court stated

that even if the initial interaction is considered an investigatory detention,

information provided by informants—here, Jesse Sanders—may provide

police with reasonable suspicion to conduct an investigatory stop. The

suppression court stated:

> Instantly, Officer Larmer received a tip from a named informant that a possible DUI was in progress. The informant [Jesse Sanders] was well known to Officer Larmer. The information presented was specific and reliable as the informant made personal observations of [Appellant's] condition then followed [Appellant] as he drove. The information provided by Mr. Sanders gave Officers reasonable suspicion that [Appellant] was driving under the influence.
>
> This suspicion was heightened and corroborated during the encounter on [Appellant's] porch when Officer Miller learned from [Appellant] that he had recently driven and when he noticed signs of alcohol intoxication including a strong smell of alcohol coming from [Appellant's] breath, bloodshot eyes, slow lethargic movements, unsteadiness and a flushed face.
>
> After Officers had all of that information [Appellant] asked the Officers to leave his property and attempted to go back into his house. At that time he was detained by the Officers with minimal compulsion. Clearly, by then the Officers possessed reasonable suspicion that [Appellant] was driving under the influence. Without doubt there was then an investigatory detention. Based on the totality of the circumstances Officers possessed reasonable suspicion that [Appellant] was driving under the influence of alcohol sufficient to subject him to field sobriety testing.

Trial Court Opinion (Suppression), 4/17/13, at 5–6. We agree with the trial

court's alternative conclusion.

As the trial court noted, "Even if this initial interaction is considered an

investigatory detention, information provided by informants may provide

Police with reasonable suspicion to conduct an investigatory stop.

***Commonwealth v. Griffin***, 954 A.2d 648, 651 (Pa. Super. 2008)." Trial

Court Opinion (Suppression), 4/17/13, at 11. Although the instant scenario was not a traffic stop, because we have concluded that the subsequent encounter between police and Appellant was an investigative detention, the requirement of reasonable suspicion herein is akin to that required to conduct an investigatory stop, and we draw guidance from case law expounding on that concept. This Court recently emphasized:

> To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. Naturally, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. This Court has examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and has explained:
>
>> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.
>>
>> When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Washington*, 63 A.3d 797, 803 (Pa. Super. 2013) (quoting *Commonwealth v. Barber*, 889 A.2d 587, 593–594 (Pa. Super. 2005) (quotations, quotation marks, and citations omitted)).

Upon review and in consideration of the circumstances of this case, we conclude the trial court did not err in determining that the officers had reasonable suspicion to detain Appellant and submit him to field-sobriety tests. Officer Larmer, a thirteen-year veteran in the Hamiltonban Township Police Department, received the equivalent of a reliable tip on her work cellular telephone indicating that Appellant appeared "confused and possibly intoxicated" and had "crossed over the center line several times." N.T. (Suppression), 3/25/13, at 5. The detailed information provided by Mr. Sanders, who was known to Officer Larmer as reliable, provided Officer Larmer with reasonable suspicion that Appellant was driving under the influence. *Id*. at 5–6. Officer Larmer testified that she contacted Adams

County Control and alerted them to the presence of a potentially intoxicated driver in Fairfield Borough and further, provided the identifying information she had received from Mr. Sanders. *Id*. at 6. County Control then notified Officer Dustin Miller of the Carroll Valley Borough Police Department that there was a possible intoxicated driver and gave him the license plate number of the vehicle and the address where it was registered. *Id*. at 19. Officer Larmer and Officer Miller spoke on the telephone at that point. *Id*. at 7, 20. Officer Larmer and Officer Miller each proceeded to Appellant's residence, arriving within "a few minutes," *id*. at 8, and located the green Ford station wagon with the license plate number that Mr. Sanders had described to Officer Larmer. *Id*. at 21.

Officer Miller knocked on Appellant's back door. N.T. (Suppression), 3/25/13, at 21. When Appellant opened the door, Officer Miller noticed a "strong" odor of alcohol emanating from Appellant and asked him to step onto the porch. *Id*. at 22. Appellant exhibited signs of intoxication including being "unsteady," with "slurred" speech, his eyes "were bloodshot red," his face "was flushed red," and his movements were "slow" and "lethargic." *Id*. at 22–23. During the conversation outside of Appellant's house, Appellant admitted that he had been driving approximately ten to fifteen minutes before the officers arrived and that he was returning home

from Ventura's Restaurant. *Id*. at 24. Thus, prior to the sobriety tests, Officer Miller noticed indicia of intoxication.

Officer Miller's police vehicle was equipped with an in-car camera system, it was recording the events described, and copies of the recording were admitted without objection. N.T. (Suppression), 3/25/13, at 27–28. Appellant exhibited indicia of intoxication when performing the field sobriety tests. *Id*. at 26. Officer Miller testified that Appellant admitted to drinking beer at Ventura's Restaurant and did not indicate he had anything to drink after returning to his home. *Id*.

Based on the foregoing, we conclude that the officers possessed requisite reasonable suspicion and were able to point to articulable and specific facts that gave rise to the probability that Appellant had been driving under the influence. *Cauley*, 10 A.3d at 327. The officers reasonably drew the inference that Appellant "having driven to the scene and immediately exhibited signs of intoxication, drove to the scene while intoxicated." *Id*. As a result of the field sobriety tests, police had probable cause to arrest Appellant. Appellant has offered no substantial argument to the contrary in his brief. Appellant's Brief at 11. As such, we further conclude the trial court properly denied Appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015