J-S79023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JORDAN DIETRICH FINK | |
| Appellant | No. 3258 EDA 2015 |

Appeal from the Judgment of Sentence October 9, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000008-2015

BEFORE: GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED DECEMBER 27, 2016**

Jordan Dietrich Fink appeals from the October 9, 2015 judgment of sentence entered in the Delaware County Court of Common Pleas following his conviction for driving under the influence of a controlled substance (second offense).[1] We conclude that the police officers had probable cause to arrest Fink for driving under the influence. However, we reverse the judgment of sentence and remand this case to the trial court to determine whether Fink's consent to the blood test was validly obtained in light of ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), which was decided after the trial court's decision in this case.

---

[1] 75 Pa.C.S. § 3802(d).

On May 4, 2014, Officer Andrew Ronsvalle of the Marple Township Police Department responded to a three-vehicle accident at the intersection of South Sproul Road and Williamsburg Drive in Marple Township, Delaware County. N.T. Suppression Hr'g, 3/4/15, at 16-17. At the suppression hearing,[2] Officer Ronsvalle testified that when he spoke with Fink at the scene, Fink was "confused and sluggish" when answering questions, and that the officer often had to repeat himself. *Id.* at 23. Fink was unsteady on his feet, leaned against the tailgate of a pickup truck for balance, and appeared "very lackadaisical" and tired. *Id.* at 23, 30-31. Fink informed Officer Ronsvalle that he had caused the crash, but was unsure how. *Id.* at 26. Officer Ronsvalle further testified that Fink's pupils were constricted. *Id.* at 28. Fink told Officer Ronsvalle that he had not hit his head in the accident and that he had taken Adderall "while on his travels back from Florida." *Id.* at 28-29.

Officer Ronsvalle concluded that Fink could not safely operate a motor vehicle because he was under the influence of a controlled substance. *Id.* at 30. However, the officer did not perform a field sobriety test because it was a busy roadway and Fink was having a "hard time standing." *Id.* at 31-32.

Officer Ray Stiles also arrived at the scene. *Id.* at 69. Officer Stiles found Fink's vehicle to be inoperable, and told Fink that he therefore needed

---

[2] The trial court conducted a two-day suppression hearing on March 4, 2015 and April 17, 2015.

to get a ride home. *Id.* at 72. Officer Stiles noticed Fink's pupils were pinpointed and that his responses were sluggish. *Id.* at 76. Officer Stiles found Fink to be confused at times and unsteady.[3] *Id.* at 76, 79.

Officer Ronsvalle then placed Fink under arrest, handcuffed him, and drove him to the hospital. *Id.* at 34-35. Officer Ronsvalle testified that before leaving for the hospital he informed Fink that he did not have a right to refuse a blood test and that if he did refuse, his license would be suspended for one year. *Id.* at 35. Officer Ronsvalle testified that Fink responded, "yes, no problem." *Id.* at 36. Officer Ronsvalle did not read the DL-26 form[4] to Fink because Fink did not refuse the testing, but did inform Fink of "the penalty" for refusing. *Id.* at 36. The blood test results revealed the presence of cannabinoids (marijuana) and alprazolam (generic Xanax). *Id.* at 38.

Fink's father, David Fink ("David"), testified that his son had called him from the accident scene and requested a ride. N.T. Suppression H'rg,

---

[3] Officer Stiles searched Fink's vehicle and found rolling paper, eye drops, a prescription bottle containing two different color pills, and a one-inch-by-one-inch Ziploc bag containing pills. The trial court suppressed the evidence found during the search of the vehicle. The decision to suppress that evidence is not at issue in this appeal.

[4] The DL-26 form contains warnings of the potential consequences of a person's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year and that, if convicted of violating 75 Pa.C.S. § 3802(a), the individual will face more severe penalties because of the refusal.

4/17/15, at 5-6. David stated that Fink had spoken clearly and crisply. *Id.* at 6. Further, David stated that Fink was not stumbling at the scene and was standing upright next to the officer. *Id.* at 10. When David met with Fink two hours later, Fink did not appear to be under the influence of narcotics. *Id.* at 11-13.

The trial court granted Fink's motion to suppress the evidence found during the warrantless search of the vehicle, but denied Fink's motion to suppress the blood test results.

Following an August 13, 2015 stipulated trial, the trial court found Fink guilty of driving under the influence of a controlled substance, 75 Pa.C.S. § 3802(d)(2). On October 9, 2015, the trial court sentenced Fink to 90 days to 23 months of incarceration, 120 hours of community service, a $300.00 mandatory cost assessment, and 3 years of consecutive probation. On November 6, 2015, Fink filed a timely notice of appeal.

Fink raises the following issues on appeal:

> I. DID THE TRIAL COURT ERR BY FAILING TO SUPPRESS ALL OF THE EVIDENCE IN THIS CASE FOR LACK OF PROBABLE CAUSE BY THE POLICE OFFICER TO ARREST THE DEFENDANT?
>
> II. DID THE TRIAL COURT ERR BY FAILING TO SUPPRESS [FINK'S] BLOOD RESULTS FOR LACK OF CHEMICAL TEST AND *O'CONNELL*[5] WARNING WHICH ARE REQUIRED BY 75. P.S. 1547?

---

[5] *Com., Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

III. DID THE TRIAL COURT ERR BY FAILING TO GRANT [FINK'S] MOTION TO SUPPRESS HIS BLOOD RESULTS FOR LACK OF A SEARCH WARRANT AS IS REQUIRED BY THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS AND REPORTED CASES?

Fink's Br. at 4 (suggested answers omitted).

Fink challenges the trial court order denying in part his motion to suppress. When reviewing the denial of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa.Super. 2013). We may only consider evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013). In addition, because the Commonwealth prevailed on this issue before the suppression court, we consider only the Commonwealth's evidence and so much of the defense evidence "as remains uncontradicted when read in the context of the record as a whole." *Brown*, 64 A.3d at 1104 (quoting *Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super. 2010)). We may reverse only if the legal conclusions drawn from the facts are in error. *Id.*

Fink argues the police officers lacked probable cause to arrest him, and that the blood-test evidence should have been suppressed as the fruit of an unlawful arrest. Fink's Brief at 13-16. In support of that claim, Fink observes that while Officer Ronsvalle testified at the suppression hearing that Fink had not given a reason for the accident, in the affidavit of probable cause he stated that Fink had said he was distracted by his cell phone. *Id.*

at 13. Fink also notes that Officer Ronsvalle did not conduct a field sobriety test and was not a drug recognition expert, and that there was no odor of alcohol or marijuana at the scene. Further, Fink reasons that because Officer Stiles testified that he had advised Fink to ask someone to pick him up from the scene, and that he was not arrested until after the officers discovered the drug evidence in his vehicle, the police did not have probable cause before the search. *Id.* at 14.

Police may not arrest an individual unless they have "probable cause to believe that a crime has been committed by the person who is to be arrested." *Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa.Super. 2007). Our Supreme Court has stated:

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." The question we ask is not whether the officer's belief was "correct or more likely true than false." Rather, we require *only a "probability,* and not a prima facie showing, of criminal activity." In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (emphasis in original) (citations omitted).

The trial court found, based upon the totality of the circumstances, that the police officers had probable cause to believe Fink was under the influence of a controlled substance to a degree that impaired his ability to

- 6 -

safely drive a vehicle.[6] Opinion, 4/14/2016, at 8 ("1925(a) Op."). The trial court noted that Fink was leaning against a pick-up truck for balance and was unsteady on his feet, that Fink was slow to answer questions, appeared confused and sluggish, and had constricted pupils. *Id.* Further, Fink had informed Officer Ronsvalle that he had not hit his head during the accident, *id.* at 5, but had taken Adderall on his drive home from his school in Florida, *id.* at 5, 8.

Although Officer Stiles testified that he had suggested to Fink to call for a ride home, Officer Stiles also testified that Fink's pupils were "pinpointed," that Fink was "sluggish in his responses," that Fink was unable to focus on the "direct questions or exactly what was going on" and that he was "[c]onfused at times." N.T., 3/4/15, at 76.[7] Further, Officer Ronsvalle

_____

[6] The Vehicle Code provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances: . . . (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(d)(2).

[7] Although the search of the vehicle provided additional evidence in support of the conclusion that Fink was driving while under the influence of drugs, the officers had probable cause without that evidence. Further, the officer's testimony did not rely on the items found during the search to support the arrest. *See* N.T., 3/4/16, at 60-62 (Officer Ronsvalle testified that he did not know whether Fink was in police car before Officer Stiles provided items uncovered in search); *id.* at 95-96 (Officer Stiles testified he did not recall what step in arrest process Officer Ronsvalle was in when he presented contraband, that is, he did not remember whether Fink was handcuffed or where Fink was located at the time).

explained that when Fink was being processed at the police station, he said he was using his cell phone at the time of the accident, but, at the scene, Fink had offered no explanation for the accident. *Id.* at 47.

We conclude that the trial court's factual conclusions are supported by the record and that the court did not err in finding the police officers had probable cause to arrest Fink. *See Commonwealth v. Weaver*, 76 A.3d 562, 568 (Pa.Super. 2013) (police had probable cause to arrest for driving under the influence of a narcotic where an identified concerned citizen reported that appellant's car was weaving and crossing into the oncoming lane of traffic; trooper followed Appellant and initiated a stop after he observed erratic driving; appellant appeared sluggish and was slow to respond to commands; appellant had an injured leg and could not perform the other field sobriety tests so trooper twice administered the horizontal gaze nystagmus test, which revealed that appellant's eyes had extensive nystagmus, which is rapid involuntary oscillation of the eyeballs).

Fink's next two issues address whether he validly consented to the blood test. In his second issue, Fink contends the trial court erred when it denied his motion to suppress the blood test results because the police officers failed to issue chemical-test and *O'Connell* warnings, as required by 75 Pa.C.S. § 1547. Fink maintains that section 1547 requires police officers to warn the arrested individual of both the potential license suspension and the increased criminal penalties that will be applied if he refuses to submit to a blood test. Fink's Br. at 17. He argues that his consent to the test was

involuntary because the warnings were not provided, and he was told he: "didn't have a right to refuse. You have to go. You have to take it. If you don't your license will be suspended for a year." Fink's Br. at 19 (quoting N.T., 3/4/2015, 35). He argues that the police were required to tell him he **could** refuse to take the blood test. *Id.* at 21.

In his third and final issue, Fink makes the related claim that the trial court erred when it denied his motion to suppress the blood test because the test was unconstitutional. Fink's Brief at 23. He contends that the police officers were required to obtain a search warrant prior to obtaining his blood test and that he did not validly consent to the test absent the warrant because any consent was either coerced or the result of receiving incorrect information from Officer Ronsvalle. *Id.* at 23-24.

The United States Supreme Court has concluded that because "the taking of a blood sample" is a search within the meaning of the Fourth Amendment of the United States Constitution, absent an applicable exception, police officers may not compel the taking a blood sample of a defendant without a search warrant. *Birchfield v. N. Dakota*, 136 S.Ct. 2160, 2173, 2185 (2016).[8] One exception to the warrant requirement

---

[8] The Supreme Court, however, held that police officers may administer a breath test without a warrant as a search incident to arrest. *Birchfield*, 136 S.Ct. at 2185.

occurs where a person voluntarily consents to the search. ***Id.*** at 2185.[9]

The Court in ***Birchfield*** discussed implied-consent laws, in which cooperation with blood alcohol testing is "a condition of the privilege of driving on state roads." ***Id.*** at 2168, 2185-86. The Court held that, although implied-consent laws that impose civil penalties and evidentiary consequences for refusing to consent are constitutional,[10] implied-consent laws that "impose criminal penalties" for refusing to consent to a blood test are unconstitutional. ***Id.*** at 2185-86.[11]

---

[9] Fink argues the Commonwealth did not establish exigent circumstances to justify the warrantless search. However, the applicable warrant exception is consent, not exigent circumstances.

[10] The Court in ***Birchfield*** stated:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. ***See, e.g., McNeely, supra***, at –––––, 133 S.Ct., at 1565–1566 (plurality opinion); [***South Dakota v. Neville***, 459 U.S. 553, 560, 103 S.Ct. 916, 920 (1983)] Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

136 S.Ct. at 2185.

[11] The trial court's 1925(a) opinion preceded the decision in ***Birchfield***. Where a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." ***Schriro v. Summerlin***, 542 U.S. 348, 351, 124 S.Ct. 2519, 2522 (2004).

Pennsylvania's implied-consent law provides that a person's license may be suspended if a person refuses a requested blood test. 75 Pa.C.S § 1547(b) ("If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows . . . ."). Pennsylvania law further provides increased criminal penalties if a person refuses a blood test and is later convicted of violating section 3802(a)(1). *See* 75 Pa.C.S § 3804(c) (providing sentencing ranges for "[a]n individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d)"). Further, Pennsylvania law provides that:

> (2) It shall be the duty of the police officer to inform the person that:
>
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>
> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(b)(2).[12] Accordingly, in Pennsylvania, although a driver cannot be convicted of a separate offense for refusing to consent to a blood

---

[12] In **Commonwealth v. Gorbea-Lespier**, this Court held that **O'Connell** "warnings need only be given to an arrestee when the arrestee **refuses** to submit to a test to determine the alcoholic content of blood,
*(Footnote Continued Next Page)*

test, the driver faces increased penalties if later convicted of certain DUI offenses.[13] ***Commonwealth v. Evans***, 2016 Pa.Super. 293, at 17 (Pa.Super. filed Dec. 20, 2016).

We must determine whether Fink consented to the blood test, either expressly or pursuant to Pennsylvania's implied consent law, and whether any such consent was valid. The Pennsylvania Supreme Court has stated:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant[.] Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

***Commonwealth v. Smith***, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

_(Footnote Continued)_ ⸻⸻⸻⸻

whether it is a breathalyzer or actual blood test." 66 A.3d 382, 389 (Pa.Super. 2013) (emphasis added).

[13] Fink was convicted of driving under the influence of a controlled substance in violation of 75 Pa.C.S § 3802(d)(2), which, unlike 75 Pa.C.S § 3802(a)(1), does not provide for increased penalties for refusal.

The trial court found that Fink affirmatively consented to the blood test, and that his consent was "unequivocal, specific and voluntary." 1925(a) Op. at 9. The court explained that Fink was cooperative with the officers and, although Officer Ronsvalle did not provide Fink with a DL-26 form containing the **O'Connell** warnings, he did explain the penalties of a refusal. **Id.** The trial court further concluded that because Fink did not refuse the test, any claim based on a lack of **O'Connell** warnings is meritless. **Id.**

The suppression hearing, however, occurred before the Supreme Court issued its decision in **Birchfield**.[14] Therefore, the hearing did not focus on whether Fink had been informed that he might face greater criminal penalties if he refused consent. Officer Ronsvalle testified that he informed Fink his license would be suspended if he refused to consent to the blood test. That warning was fully consistent with **Birchfield**. What is unclear from the record, however, is whether Officer Ronsvalle told Fink that

_____

[14] **Birchfield** held that a state may not base its implied-consent law on the risk of criminal penalty for refusal to consent to a blood test, because imposing any such penalty would be constitutionally prohibited. A logical corollary to **Birchfield**'s holding is that when a driver's express consent to a blood test is obtained based on a **threat** of criminal penalties for refusal, penalties that may not be constitutionally imposed, the express consent is invalid. **See Bumper v. N. Carolina**, 391 U.S. 543, 547, 88 S.Ct. 1788, 1791 (1968) (consent not valid where police officer asserted he possessed, but did not possess, valid warrant).

refusing consent would also expose him to a higher criminal penalty if he were later convicted of driving under the influence.[15]

Following **Birchfield**, the police may validly obtain consent based on a warning of a license-suspension penalty, because the Supreme Court made clear that such penalty may be constitutionally imposed. In contrast, where consent is obtained following a warning that refusal will subject a motorist to "the pain of committing a criminal offense," 136 S.Ct. at 2186, a penalty that in fact may **not** be imposed, that consent is involuntary. **See Evans**, 2016 Pa.Super 293, at 17-18 (finding officer's advisory to appellant partially inaccurate where officer informed appellant of increased criminal penalties and vacating judgment of sentence and remanding for re-evaluation of consent based on totality of circumstances); **cf. Birchfield**, 136 S.Ct. at 1286 (remanding to state court to determine whether appellant voluntarily consented to blood test where appellant had been informed submission to test was required, his license was suspended, and he was fined in an administrative proceeding). Because we cannot discern from the record the specific warning provided to Fink prior to his consent to the blood test, we are unable to determine whether his consent was constitutionally obtained. We must, therefore, reverse the judgment of sentence and remand to the

---

[15] When the trial court asked Officer Ronsvalle whether he "did advise [Fink] of the penalty" on the DL-26 form, the officer answered "Yes." N.T. 3/4/15, at 36. The DL-26 form contains both penalties, the license suspension and increased criminal penalty.

trial court for a determination as to whether Fink consented to the blood test after being informed **only** that his license would be suspended if he refused, or whether he consented after **also** being informed that if he refused he would face increased criminal penalties if later convicted.

Accordingly, we find the trial court did not err in finding the police officers had probable cause to arrest Fink for suspected DUI. However, we remand this case to the trial court to determine whether Fink validly consented to the blood test.

Judgment of sentence reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2016