J-S32020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN MICHAEL RODE | : | |
| | : | |
| Appellant | : | No. 530 WDA 2021 |

Appeal from the Judgment of Sentence Entered February 25, 2019
In the Court of Common Pleas of Clearfield County
Criminal Division at CP-17-CR-0000198-2018

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED: NOVEMBER 12, 2021**

Steven Michael Rode (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of eight counts of arson, four counts each of aggravated arson and recklessly endangering another person, and one count of risking catastrophe.[1]  Appellant claims the trial court erred in denying his suppression motion.  Upon review, we affirm.

The affidavit of probable cause in this case reads as follows:

1. [Corporal Greg] Agosti, a co-affiant is employed by the Pennsylvania State Police and is a certified fire investigator in accordance with the National Fire Protection Association Standard 1033 as recognized by the Pennsylvania Office of the State Fire Commissioner and maintains Certified Fire Investigator Status with the International Association of Arson Investigators.  Officer [Ken] Kiehlmeier, a full-time police

---

[1] 18 Pa.C.S.A. §§ 3301(a)(1), 3301(a.1)(ii), 2705, and 3302(b).

officer of the Sandy Township Police Department is a co-affiant in this matter.

2. The Sandy Township Fire Department was dispatched to Fayette Resources, an occupied assisted living facility at 15 Arminta Street in Sandy Township, Clearfield County on 01/15/18 at 0035 for a report of a dryer fire. Fayette Resources is a community home for individuals with intellectual disabilities. The fire department located a fire in a laundry room in the basement of the facility near the power cord for the dryer. Two employees, Owen Samuels [(Samuels)] and [Appellant], were on site at the time of the fire. The fire was extinguished.

3. On 01/21/18 the Sandy Township Fire Department was dispatched to the same facility for another fire in the laundry room at 2145 hours. The fire department located clothing burning on the floor near the clothes dryer. The fire was spreading up the wall. West Sandy Hose Company Chief Bill Beers requested PSP assistance with determining the cause of the fire.

4. … Samuels, an employee of Fayette Resources, advised the fire department a fire occurred earlier in the evening on 01/21/18 inside the clothes dryer. He explained he and [Appellant] located clothing burning inside the dryer while the dryer was operating. Samuels utilized a fire extinguisher and removed the clothing from the dryer. The fire department was not requested. The facility was evacuated and the 4 residents were relocated to another property. Samuels and [Appellant] returned to the property to gather personal items for the displaced residents. [Appellant] was in the building for 10-15 minutes before exiting. Samuels then entered the building an additional time to locate another personal item. Upon his entry, he immediately observed smoke again. Samuels called 911. The Sandy Township Fire Department responded to the scene and extinguished a fire in the basement laundry room. Samuels met with Chief Beers and reviewed the damage. Samuels recognized the fire consumed some clothing which was part of the earlier dryer fire. He advised Chief Beers the clothing appeared to be moved from where he originally placed it after extinguishing it the first time.

- 2 -

5. Cpl. Agosti arrived at the scene and conducted a scene examination. The cause of the most recent fire in the laundry room was determined to be the result of arson. The electric clothes dryer was also examined pertaining to the earlier fire on 01/21/18. There was no electrical or mechanical fault located with the appliance. The cause of the fire which occurred inside the dryer was also determined to be the result of arson. Indications of arson were also present relating to the fire that occurred on 01/15/18 at 0035 hours.

6. Cpl. Agosti and Officer Kiehlmeier conducted interviews of staff and residents at the scene. Owen Samuels provided accounts of events leading to each fire. He also informed officers another small fire occurred on 01/14/18 prior to the fire at 0035 hours on 01/15/18. He explained power in the building kept going off and on. During this period smoke was observed. [Appellant] located a small fire inside a baseboard heat unit along the laundry room wall. [Appellant] obtained a glass of water and extinguished the fire.

7. [Appellant] was interviewed by Cpl. Agosti in the presence of Officer Kiehlmeier at the scene on 01/22/18 at approximately 0030 hours. [Appellant] explained how he located each fire and the actions he took because of each fire. He explained he was praised by his employer for his actions on 01/15/18. Cpl. Agosti advised [Appellant] the fires were the result of the crime of arson. [Appellant] confessed to setting 4 fires and explained each one in detail. He advised he first lit dryer lint on fire inside the baseboard heating unit beside the laundry room on 01/14/18. He then ignited a cardboard insect glue trap on fire which was on the floor behind the dryer at 0035 hours on 01/15/18. [Appellant] further explained he poured alcohol on clothing inside the dryer and ignited it with a lighter. Finally, he lit the previously burned clothing with a lighter. He piled the clothing against a wood paneled partition wall at the entrance of the laundry room. [Appellant] explained he loved his job and worked very hard for his employer. He felt he did a good job but did not receive the recognition he deserved. He received praise from his employer for his actions locating the fire and evacuating the building on 01/15/18. He ignited the fires on 01/21/18 to receive more accolades. [Appellant] provided Officer Kiehlmeier with a written statement documenting his previously verbal confession to Cpl. Agosti.

- 3 -

8. There were 5 people present inside the facility at the time the fire was ignited and discovered. The discovery of the fire caused alarm and exposed all residents and employees to danger of death or bodily injury.

9. Physical evidence supported the confession made by [Appellant]. ...

Affidavit of Probable Cause, 1/25/18, at 1-3.

The Commonwealth charged Appellant with the aforementioned offenses. On April 26, 2018, Appellant filed a suppression motion claiming his confession was illegally obtained. The court held a hearing on August 3, 2018, and denied the motion on September 25, 2018. A jury rendered its guilty verdicts on January 3, 2019. On February 25, 2019, the trial court sentenced Appellant to an aggregate 4 - 8 years of incarceration. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

[1.] Whether the [trial court] erred by denying [Appellant's] OPTM to Suppress Evidence, where Police Officer(s) did not have sufficient cause to conduct an investigative detention[?]

[2.] Whether the [t]rial [c]ourt erred by denying [Appellant's] OPTM to Suppress Evidence, where [Appellant] made inculpatory statements in the course [of] a custodial interrogation without being apprised of his right to remain silent and/or right to counsel[?]

[3.] Whether the [t]rial [c]ourt erred by denying [Appellant's] OPTM to Suppress Evidence, where [Appellant's] written confession was not voluntarily given[?]

Appellant's Brief at 7.

In reviewing Appellant's three issues challenging the denial of suppression, we recognize:

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). Appellate review is limited to the suppression hearing record. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) (citation omitted).

First, Appellant contends he was subjected to an investigatory detention, and the police lacked "the requisite cause to believe that Appellant was engaged in criminal activity when two officers sequestered Appellant in the kitchen of the home, and advised him that they suspected him of setting various fires at the residence." Appellant's Brief at 11. He continues:

> Appellant readily concedes that the police did not physically threaten, restrain or coerce him into confessing during the course of the interview. At the same time, however, there is no evidence to suggest that Appellant, or any reasonable person, would have understood that he was free to terminate the interview and leave the scene of the incident. To the contrary, Appellant was acutely aware that Corporal Agosti was in charge of the investigation and the foremost authority in the room where the interview took place, regardless of whether he was in uniform or plain clothes. And although Corporal Agosti indicated very early on that Appellant was free to leave, he also clearly communicated his belief that the cause of the fires was arson and that Appellant was responsible.

*Id.* at 15-16.

It is well settled that the "Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007). Courts recognize three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention. *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017).

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure [of the] person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free

to decline the officers' request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

***Commonwealth v. Collins***, 950 A.2d 1041, 1046-47 (Pa. Super. 2008) (*en banc*) (citation omitted).

Further,

No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them. However, if the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure. The term "mere encounter" refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the fourth amendment. For example, a mere encounter transpires when an officer approaches a citizen on a public street for the purpose of making inquiries.

In contrast, an investigative detention occurs when a police officer temporary detains an individual by means of physical force or a show of authority for investigative purposes. In other words, in view of all of the circumstances, if a reasonable person would have believed that he was not free to leave, then the interaction constitutes an investigatory detention.

***Commonwealth v. Cauley***, 10 A.3d 321, 325-26 (Pa. Super. 2010) (citations omitted). "Because the level of intrusion may change during the course of the encounter, the record must be carefully scrutinized for any evidence of such changes." ***Id.*** at 326 (citations omitted).

At the preliminary hearing,[2] Corporal Agosti testified that he was called to assist the Sandy Township Fire Department with an arson investigation at Fayette Resources during the early morning hours of January 21, 2018. N.T., 2/16/18, at 6. Corporal Agosti learned that four people lived at Fayette Resources, and were cared for by two employees, Samuels and Appellant. *Id.* at 10. Corporal Agosti testified that he initially believed that the suspected arsonist would be one of the residents, because he had dealt with similar situations in the past. *Id.* at 36.

Corporal Agosti first interviewed Samuels in the kitchen of Fayette Resources. *Id.* at 11-15. Samuels then walked Corporal Agosti through the building and showed him where the fires had occurred. *Id.*

Corporal Agosti next spoke with Appellant, who had stayed voluntarily to talk with Corporal Agosti. *Id.* at 37. Speaking with Appellant in the kitchen, Corporal Agosti did not "Mirandize"[3] him, and told Appellant he was free to leave at any time. *Id.*; *see also* N.T., 8/3/18, at 10 (Appellant testifying, "They said I was free to leave at any time."). While Corporal Agosti interviewed Appellant, Officer Kiehlmeier, who was in uniform, was present in the kitchen. N.T., 2/16/18, at 15, 37.

---

[2] At the suppression hearing, the Commonwealth successfully moved to incorporate the preliminary hearing transcript into the record. *See* N.T., 8/3/18, at 3.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After Appellant explained his account of what occurred, Corporal Agosti, with Officer Kiehlmeier present, told Appellant that he suspected him of setting the fires. N.T., 2/16/18, at 15-16, 37. With this communication, what began as a mere encounter between Corporal Agosti and Appellant developed into an investigative detention. *See Commonwealth v. Parker*, 161 A.3d 357, 364-65 (Pa. Super. 2017) ("The combination of the threatening presence of several officers and the indication that appellant was suspected of criminal activity requires the conclusion that a reasonable person would believe that he was not free to leave."). We therefore address whether the police had the necessary reasonable suspicion to detain Appellant.

We have explained:

> To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In addition, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot. An investigative detention may last as is necessary to confirm or dispel such suspicion.

*Cauley*, 10 A.3d at 325-26 (citations omitted).

Here, the suppression record supports the trial court's determination that Corporal Agosti "had reasonable suspicion to temporarily seize [Appellant] for the purpose of an investigatory detention." Trial Court Opinion, 6/22/21, at 6. Prior to arriving at Fayette Resources, Corporal Agosti was informed by Sandy Township firefighters that they were "dispatched to a fire in the laundry room and had a fire in that same laundry room about a week

prior. And there were some things that were culminating that night that just didn't make sense to them, and they were concerned that a fire may have been intentionally set." N.T., 2/16/18, at 6. Corporal Agosti also learned Appellant was "on shift at the time of all the fires." *Id.* at 10.

Once at Fayette Resources, Corporal Agosti examined the exterior and interior of the facility, including the laundry room where the fires occurred. *Id.* at 6-9. Based on his examination, Corporal Agosti determined that all four fires were caused by arson. *Id.* at 22. Corporal Agosti then interviewed Mr. Samuels. *Id.* at 11-15. Based upon "Mr. Samuels' explanation ... and his reactions to my questions," Corporal Agosti "did not think Mr. Samuels was involved." *Id.* at 36.

Corporal Agosti then interviewed Appellant, who gave his account of the events surrounding the fires. *Id.* at 15-16. Corporal Agosti testified that Appellant's version of events did not match Samuels'. *Id.* Appellant's varying versions of events caused Corporal Agosti to suspect Appellant may have set the fires — and gave him the requisite reasonable suspicion to conduct an investigatory detention. N.T., 8/3/18, at 34-35. Thus, Appellant's first issue does not merit relief.

In his second issue, Appellant argues that his statements to police should have been suppressed because "Appellant was never apprised of his *Miranda* rights prior to agreeing to participate in the interview with police." Appellant's Brief at 18.

"If an individual is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officials, evidence obtained through the interrogation cannot be used against him." *Commonwealth v. Harper*, 230 A.3d 1231, 1237 (Pa. Super. 2020) (citation omitted). "In order to trigger the safeguards of *Miranda*, there must be both custody and interrogation." *Id*. (citation omitted). Further:

> *Miranda* warnings are required only when a suspect is in custody. As [the Pennsylvania Supreme Court] has noted, a person is in custody for *Miranda* purposes only where he is physically denied his freedom of action in any significant way or is placed in a situation which he reasonably believes that his freedom of action or movement is restricted by the interrogation. The U.S. Supreme Court has elaborated that, in determining whether an individual was in custody, the ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*Commonwealth v. Sherwood*, 982 A.2d 483, 499 (Pa. 2009) (citing, *inter alia*, *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

As discussed above, Appellant was subjected to an investigatory detention. "It is well-established that the dictates of *Miranda* do not attach during an investigatory detention." *Commonwealth v. Murray*, 936 A.2d 76, 81 (Pa. Super. 2007) (citation omitted). Therefore, because Appellant "was not in a custodial interrogation with the Officers, there was no requirement that [Appellant] be provided with [] *Miranda* warnings[.]" Trial Court Opinion, 6/22/21, at 6. Appellant's second issue lacks merit.

In his final issue, Appellant claims his "written admission of guilt should have been suppressed on the grounds that it was not voluntarily and freely

- 11 -

given." Appellant's Brief at 24. Appellant argues that his statement was involuntarily because he was fatigued, under "obvious mental distress," and the police officers coerced the statement from him. *Id.* at 22-24. This issue is waived because Appellant failed to raise it in the trial court.

The Pennsylvania Rules of Criminal Procedure provide that a "defendant's attorney … may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(A). "The motion shall state **specifically** and with **particularity** the evidence sought to be suppressed, **the grounds for suppression**, and the facts and events in support thereof." Pa.R.Crim.P. 581(D) (emphasis added). Additionally:

> It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. *Commonwealth v. Powell*, [] 956 A.2d 406, 423 ([Pa.] 2008); *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

*Commonwealth v. Rodriguez*, 174 A.3d 1130, 1144–45 (Pa. Super. 2017). Also, where an appellant includes an issue in his Pa.R.A.P. 1925(b) statement, such inclusion does not "resurrect" a waived claim. *Id.* at 1145 n.6 (citing *Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009)).

In his pre-trial suppression motion, Appellant stated: "It is averred that the failure of Corporal [Agosti] to *Mirandize* [Appellant] during the 90-minute

custodial interrogation warrants the suppression of the statements provided by [Appellant]." Omnibus Pretrial Motion, 4/26/18, at ¶ 10. Appellant never raised fatigue, duress, or coercion as a basis for suppression. *Id.* at ¶¶ 9-15; *see Commonwealth v. Collazo*, 654 A.2d 1174, 1176 (Pa. Super. 1995) ("[T]he failure to raise a suppression issue prior to trial precludes its litigation for the first time at trial, in post-trial motions or on appeal.") (citation omitted). Consequently, the trial court did not address Appellant's issue regarding the voluntariness of his written statement in its Pa.R.A.P. 1925(a) opinion. *See* Trial Court Opinion, 6/22/21, at 3 (stating "[T]he sole issue raised by [Appellant] needs to be broken down into two separate parts."). Appellant's third issue is waived. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[4]

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum.

Judge Lazarus concurs in the result.

---

[4] In the absence of waiver, and as referenced above, Appellant appears to contradict his claim regarding the voluntary nature of his "written admission of guilt," stating, "Appellant readily concedes that the police did not physically threaten, restrain or coerce him into confessing during the course of the interview." *See* Appellant's Brief at 24, 15.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/12/2021